Robert MORENZ and Clara Morenz, Plaintiffs–Appellees,

v.

Patricia WILSON–COKER, Commissioner, Connecticut Department of Social Services, Defendant–Appellant.

No. 04–4107–CV.

United States Court of Appeals, Second Circuit.

Argued: June 24, 2005.

Decided: July 14, 2005.

407 F.3d at 29; *Vega,* 398 F.3d at 154.

René H. Reixach, Rochester, NY (Jane L. Tyree, Hersh & Fowler–Cruz LLP, on the brief), for Plaintiffs–Appellees.

Patrick B. Kwanashie, Assistant Attorney General, for Richard Blumenthal, Attorney General for the State of Connecticut, Hartford, CT (Richard J. Lynch, Assistant Attorney General, Hugh Barber, Assistant Attorney General, on the brief), for Defendant–Appellant.

Before: MINER and CALABRESI, Circuit Judges, and AMON, District Judge.[*]

[*] The Honorable Carol Bagley Amon, United States District Judge for the Eastern District of New York, sitting by designation.

CALABRESI, Circuit Judge.

## I. Introduction

This is an appeal from a grant of summary judgment by the United States District Court for the District of Connecticut (Underhill, *J.*) to plaintiffs-appellees, Robert and Clara Morenz (the "Morenzes"). The Morenzes sued defendant-appellant, Patricia Wilson–Coker, the Commissioner of the Connecticut Department of Social Services ("DSS"), for declaratory and injunctive relief, after the DSS denied Mr. Morenz's application for Medicaid. The DSS rejected the application on the ground that the Morenzes' combined assets exceeded the threshold for Medicaid eligibility. The Morenzes contended that Mr. Morenz could not be deemed ineligible on account of his spouse's assets because he had effected a valid assignment of spousal support rights to the State of Connecticut. The district court ruled in favor of the Morenzes on cross-motions for summary judgment. We affirm.

## II. Factual Background

Mr. Morenz has lived at the Wilton Meadows nursing home in Wilton, Connecticut, since October 2000. Mrs. Morenz, his spouse, lives at the family home, also in Wilton. For the purposes of the federal Medicaid statutes, therefore, Mr. Morenz is an "institutionalized spouse," and Mrs. Morenz is a "community spouse." 42 U.S.C. § 1396r–5(h). A Medicaid application in Mr. Morenz's name was filed in January 2004 with the DSS, the Connecticut agency responsible for administering the state's Medicaid program. As part of Mr. Morenz's application, an Assignment of Spousal Support Rights was submitted by Mr. Morenz, through Mrs. Morenz, who held his power of attorney. The assign-

ment purported to transfer to the State of Connecticut any rights to support that Mr. Morenz had from Mrs. Morenz. In addition, Mrs. Morenz submitted a signed "Spousal Refusal Statement" to the DSS declaring that she "decline[s] to further contribute to the financial support" of Mr. Morenz.

On March 1, 2004, the DSS denied Mr. Morenz's Medicaid application on the ground that the Morenzes' combined resources exceeded the statutory eligibility amount. The countable assets in Mr. Morenz's name fell within the $1,600 personal resource allowance permitted for Medicaid eligibility. With certain enumerated exceptions discussed below, however, a state Medicaid participant must deem a community spouse's resources as available to the institutionalized spouse in determining the institutionalized spouse's initial Medicaid eligibility.[1] 42 U.S.C. § 1396r–5(c)(2)(A). Although a community spouse is permitted to retain a sizeable community spouse resource allowance ("CSRA") beyond that permitted to the institutionalized spouse, 42 U.S.C. § 1396r–5(c)(2), the assets in Mrs. Morenz's name exceeded this allowance by approximately $157,500. Compl. ¶ 9. Under the DSS Uniform Policy Manual ("UPM"), the sole exception to considering the combined assets of both spouses in determining an institutionalized spouse's initial Medicaid eligibility is "when undue hardship exists." UPM § 4025.67(B).

The Morenzes concede that, at the time of Mr. Morenz's application, their circumstances did not qualify as "undue hard-

ship" under DSS regulations. Compl. ¶ 17. They contend, however, that the DSS is required to honor their assignment of Mr. Morenz's support rights to the state. And they argue that, pursuant to the provisions of the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), 42 U.S.C. § 1396r–5(c)(3)(A), such assignment immunizes the community spouse's assets from consideration in calculating the institutionalized spouse's initial Medicaid eligibility.

On February 25, 2004, the Morenzes moved for a temporary restraining order and preliminary injunction to prohibit the DSS from including Mrs. Morenz's assets in determining Mr. Morenz's Medicaid eligibility. The district court denied that motion without prejudice in favor of a summary judgment hearing. Both the Morenzes and Wilson–Coker moved immediately for summary judgment. In an opinion dated June 10, 2004, the district court granted summary judgment to the Morenzes. *Morenz v. Wilson–Coker*, 321 F.Supp.2d 398 (D.Conn.2004). The court enjoined Wilson–Coker from denying Mr. Morenz's Medicaid application. Pursuant to the Medicaid statute's retroactive benefits provision,[2] the court also ordered that Mr. Morenz's eligibility become effective three months prior to the court's decision. Wilson–Coker filed a timely notice of appeal.

### III. Discussion

We review the district court's grant of a motion for summary judgment *de novo*.

---

1. The resources of the community spouse are only to be deemed available to the institutionalized Medicaid recipient during the first month of Medicaid eligibility. 42 U.S.C. § 1396r–5(c)(4). Mr. Morenz currently is receiving Medicaid benefits.

2. The relevant provision reads as follows:
[I]n the case of any individual who has been determined to be eligible for medical assistance under the [Medicaid] plan, such assis-

tance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application ... for such assistance if such individual was ... eligible for such assistance at the time such care and services were furnished[.]
42 U.S.C. § 1396a(a)(34).

*Singer v. Fulton County Sheriff,* 63 F.3d 110, 114 (2d Cir.1995). Summary judgment is mandated "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The district court addressed three basic questions raised in this appeal: (1) whether the MCCA prohibits a state from deeming a community spouse's assets as available to an institutionalized ·spouse in determining the institutionalized spouse's initial Medicaid eligibility, when the institutionalized spouse has assigned to the state all rights to support from the community spouse; (2) whether Connecticut law permits an institutionalized Medicaid applicant to assign support rights to the state only when such applicant's spouse is unwilling or unable to provide the financial information needed to determine Medicaid eligibility; and (3) whether a federal court order that eligibility begin three months before the date of the order violates the Eleventh Amendment.

*1. MCCA Support Rights Provisions*

■ The MCCA governs the extent to which a community spouse's assets may factor into an institutionalized spouse's initial Medicaid eligibility determination. Paragraph (2) of the MCCA's rules for treatment of a community spouse's resources states that, aside from the CSRA, "all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse" in calculating the institutionalized spouse's resources at the time of application. *See* 42 U.S.C.

§ 1396r–5(c)(2). The next paragraph, however, provides that:

The institutionalized spouse shall not be ineligible by reason of resources determined under paragraph (2) to be available for the cost of care where -

(A) the institutionalized spouse has assigned to the State any rights to support from the community spouse;

(B) the institutionalized spouse lacks the ability to execute an assignment due to physical or mental impairment but the State has the right to bring a support proceeding against a community spouse without such assignment; or

(C) the State determines that denial of eligibility would work an undue hardship.

42 U.S.C. § 1396r–5(c)(3). The district court found that, under these provisions, "if Mr. Morenz assigns rights to support from Mrs. Morenz to the State of Connecticut ... he 'shall not be ineligible' for Medicaid because of excess resources." *Morenz,* 321 F.Supp.2d at 403.

■ We see no reason to disturb this holding. This court has held it to be "a fundamental principle of statutory construction that the starting point must be the language of the statute itself." *Rose v. Long Island R.R. Pension Plan,* 828 F.2d 910, 919 (2d Cir.1987). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.* (internal quotation marks omitted). Here, as the district court noted, the language of the statute could not be less ambiguous. A community spouse's resources cannot be included in making an institutionalized spouse's initial eligibility determination if the institutionalized spouse has assigned support rights to the state *or* undue hardship is present.

Wilson–Coker would, in effect, have us read this disjunctive "or" as a conjunctive "and." Appellant's Brief at 23 ("[O]nly if the denial of benefits will lead to undue hardship does § 1396r–5(c)(3)(A) preclude the state from denying eligibility."). Wilson–Coker notes that, under federal law, a state Medicaid plan must always condition aid upon the assignment to the state of an applicant's rights to support. 42 U.S.C. § 1396k(a)(1)(A). To provide an exemption from the general spousal-contribution requirements for precisely the same assignment of support rights, Wilson–Coker argues, would be bizarre. Even if we were to assume that these two assignment of support rights provisions cannot live comfortably together—which we do not, *see* note 4, *infra*—Wilson–Coker has, at most, demonstrated poor drafting. Without more, textual inconsistency within a complicated federal statute falls short of demonstrating the kind of clearly expressed legislative intention that would lead us not to apply the language of the statute as written.

We note, moreover, that the State Medicaid Manual of the Centers for Medicare & Medicaid Services (CMS), to which the Secretary of Health & Human Services has delegated full rulemaking authority under the Medicaid statutes, *see Wisc. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479 n. 1, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002), supports the district court's reading of the statute.[3] We have held that "even relatively informal" CMS interpretations warrant "respectful consideration due to the complexity of the [Medicaid] statute and the considerable expertise of the administering agency." *Cmty. Health Ctr. v. Wilson–Coker*, 311 F.3d 132, 138 (2d Cir.2002) (internal quotation marks omitted). We have, moreover, characterized the State Medicaid Manual as precisely the kind of "informal interpretation[ ]" that warrants "some significant measure of deference." *Rabin v. Wilson–Coker*, 362 F.3d 190, 197 (2004) (internal quotation marks omitted). Under the circumstances, and given the plain language of the statute itself, the district court rightly gave deference to the nearly identical agency interpretation. *See Morenz*, 321 F.Supp.2d at 402–03.

## 2. Connecticut Assignment of Support Rights Statute

■ Although federal law prohibits a community spouse's assets from preventing an institutionalized spouse from becoming eligible for Medicaid when all support rights are assigned to the State, whether a particular assignment of support rights is valid for purposes of § 1396r–5(c)(3)(A) is a question of state law.[4] Connecticut's law governing the as-

---

3. The section of the manual discussing the assignment of support rights provisions of the MCCA reads as follows:

Eligibility will not be denied institutionalized spouses who have resources in excess of the eligibility limits when *one or more* of the following circumstances exist:
- All support rights of institutionalized spouses are assigned to States;
- Support rights cannot be assigned to States because institutionalized spouses have physical or mental impairments of a degree which under State laws prohibit them from legally assigning rights; and States have rights under State laws to bring support proceedings against community spouses without an assignment;
- You have determined that denial of eligibility creates undue hardship ...

CMS State Medicaid Manual § 3262.2(E) (emphasis added).

4. It is this fact that enables the two requirements of support rights assignments to be comfortably consistent. The first—the federal requirement that such an assignment be made under § 1396k(a)(1)(A)—can be read as mandating no more than that the institutionalized spouse make what, on its face, would seem to be a valid assignment. The second—one of

signment of spousal support of an institutionalized Medicaid applicant provides as follows:

> An institutionalized person or person in need of institutional care who applies for Medicaid shall assign to the Commissioner of Social Services the right of support derived from the assets of the spouse of such person, provided the spouse of such person is unwilling or unable to provide the information necessary to determine eligibility for Medicaid. If such applicant lacks the ability to execute an assignment due to physical or mental impairment, the commissioner may bring a support proceeding against such applicant's spouse without such assignment.

Conn. Gen.Stat. § 17b–285. Wilson–Coker argues that this provision limits the assignment of support rights to situations in which the community spouse is unwilling or unable to provide the information necessary to determine the institutionalized spouse's eligibility. Any other attempted assignment, Wilson–Coker contends, is not permitted by state law. Since the Morenzes concede that Mrs. Morenz has cooperated in providing the necessary information, Wilson–Coker's argument, if correct, would prevent the Morenzes from availing themselves of the MCCA's exemption based on their attempted assignment of support rights.

As the district court correctly held, however, neither the statute nor DSS's own published regulations support Wilson–Coker's interpretation of the assignment statute. *See Morenz,* 321 F.Supp.2d at 403–04. By using the word "shall," the statute constitutes a mandate to institutionalized Medicaid applicants whose spouses have not provided information, but it does not by its terms limit the circumstances under which an institutionalized applicant *may* assign support rights. *See id.* Consistent with this interpretation, the DSS's own Uniform Policy Manual states only that "[t]he applicant of Medicaid benefits *must* assign to the Department rights to support available from the assets of the community spouse when the community spouse is unable to provide the information necessary to complete an assessment of spousal assets." DSS Uniform Policy Manual § 7520.07 (emphasis added). It nowhere forbids or invalidates such an assignment in other circumstances.

Connecticut law imposes a "plain meaning" rule upon courts in interpreting state statutes: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning shall not be considered." Conn. Gen.Stat. § 1–2z; *see State v. Kirk R.,* 271 Conn. 499, 857 A.2d 908, 915 n. 16 (2004). Although Wilson–Coker proffers legislative history that arguably cuts against the district court's reading,[5] we are bound to interpret Con-

---

three conditions precluding state denial of eligibility in § 1396r–5(c)(3)—presupposes an assignment that is valid *under state law.*

**5.** Specifically, Wilson–Coker points to, *inter alia,* the fact that the limiting language was added to § 17b–285 after the Commissioner of the State Department of Income Maintenance testified at legislative hearings that "our intention is to limit assignments to those

situations where the spouse is not able or is unwilling to provide the necessary information." Conn. Joint Standing Comm. Hearings, Human Servs., Pt. 4, 1991 Sess., 1097–1472, at 1348–49 (testimony of Audrey Rowe, Commissioner, Dep't of Income Maintenance).

necticut law according to Connecticut's own interpretive rules. *Cf. Allstate Ins. Co. v. Serio*, 261 F.3d 143, 152 (2d Cir. 2001) ("[F]ederal· courts ought not to deprive the state courts of the opportunity to construe their own statutes, using the interpretive tools, presumptions, and standards they deem proper."). Accordingly, we adopt the district court's view that Connecticut law permits Mr. Morenz to assign his rights of spousal support to the state in this instance. *Morenz*, 321 F.Supp.2d at 403–04.[6]

### 3. *Eleventh Amendment*

 There remains the question of whether the district court's award of benefits to begin three months prior to the date of its order constitutes retroactive relief in violation of the Eleventh Amendment. It is well-established that the Eleventh Amendment bars "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It is equally well-established, however, that where an adverse effect on the state treasury is "the necessary result of compliance with decrees which by their terms were prospective in nature," the Eleventh Amendment poses no obstacle. *Id.* at 667–68, 94 S.Ct. 1347; *see New York City Health & Hosps. v. Perales*, 50 F.3d 129, 135 (2d Cir.1995) (noting that the Eleventh Amendment does not prohibit "certain monetary awards ... [that are] ancillary to a grant of prospective relief against a state"). "What the Amendment forecloses

is an award of money required to be paid from state funds that compensates a claimant for the state's past violations of federal law." *Id.* Here, the order that payments begin retroactively is not compensation for accrued liability, but is rather an incident of the present eligibility determination required by the Medicaid statute itself. *See* 42 U.S.C. § 1396a(a)(34). Back payments are therefore necessary to compliance with the district court's prospective order. *See Caldwell v. Blum*, CCH Medicare & Medicaid Guide ¶ 30,774 (N.D.N.Y.1980) (holding that the Medicaid statute "operates independently of any relief that this Court may award [and is therefore] a 'necessary consequence of compliance with the prospective injunction,' and technically not an award of restitution for 'a past breach of legal duty'" (quoting *Edelman*, 415 U.S. at 658, 94 S.Ct. 1347)), *aff'd* 661 F.2d 907 (2d Cir.1981). We conclude that the district court's order does not run afoul of the Eleventh Amendment.

## IV. Conclusion

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

**6.** Wilson–Coker suggested at oral argument that Connecticut law is sufficiently unclear that we should certify this question to the Connecticut Supreme Court. The suggestion is not without merit, and were this a case in which time was not an important consideration, we might well follow Wilson–Coker's suggestion, given the absence of a state court interpretation. But we are here dealing with an institutionalized plaintiff who was 82 years old at the time of his complaint. The amount at issue is considerable. Under the circumstances, and given the clarity of the state law, we think the delay that certification entails makes it inappropriate in this case.