15-2512-cr
*United States v. Merz*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of June, two thousand sixteen.

PRESENT:    JOSÉ A. CABRANES,
            RAYMOND J. LOHIER, JR.,
            SUSAN L. CARNEY,
                        *Circuit Judges.*

---

UNITED STATES OF AMERICA,

                    *Appellee,*

            v.                                      No. 15-2512-cr

PATRICIA MERZ,

                    *Defendant-Appellant.*

---

FOR THE UNITED STATES OF AMERICA:    GREGORY L. WAPLES (Nikolas P. Kerest & Paul J. Van de Graaf, *on the brief*), Assistant United States Attorneys, *for* Eric S. Miller, United States Attorney for the District of Vermont, Burlington, VT.

FOR DEFENDANT-APPELLANT:    BARCLAY T. JOHNSON, Research & Writing Attorney, *for* Michael L. Desautels, Federal Public Defender for the District of Vermont, Burlington, VT.

Appeal from the July 28, 2015 judgment of the United States District Court for the District of Vermont (Christina C. Reiss, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED** in part, insofar as Merz's convictions on Counts One, Two, and Three are concerned; **REVERSED** in part, insofar as Merz's conviction on Count Four is concerned; and **REMANDED** for such further proceedings as may be appropriate and consistent with this order, including resentencing.

Defendant-appellant Patricia Merz appeals from the District Court's July 28, 2015 judgment of conviction, which followed a jury's return of a guilty verdict against her on counts of conspiring to commit the crime of interstate transportation of stolen money, in violation of the National Stolen Property Act (the "NSPA"), 18 U.S.C. § 2314, and 18 U.S.C. § 371 (Count One); transmitting in interstate commerce stolen money, in violation of the NSPA and 18 U.S.C. § 2 (Count Two); causing sums of money to be transmitted by wire in interstate commerce by means of materially false and fraudulent pretenses, representations, and promises for the purpose of executing a scheme or artifice to defraud, in violation of 18 U.S.C. §§ 1343 and 2 (Count Three); and uttering a forged security with the intent to deceive another person and organization, in violation of 18 U.S.C. §§ 513(a) and 2 (Count Four). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Merz bases her appeal on two narrow grounds. First, she argues that her convictions on Counts One, Two, and Three must be overturned because money cannot be "stolen" from a Vermont probate estate for purposes of the NSPA. Second, she argues that her conviction on Count Four must be overturned because a bank withdrawal slip is not a "security" for purposes of Section 513(a). We conclude that Merz's first argument is meritless, but that her second argument is correct.

I.      **Counts One, Two, and Three**

We begin with Merz's first argument. According to Merz, a Vermont probate estate is "simply a procedural vehicle by which [a decedent's] affairs are settled," and never "own[s] [the decedent's] property." Def.'s Br. 22. Instead, "title to [the decedent's] property vests immediately at death in [her] heirs." *Id.* at 23 (internal quotation marks omitted). As such, in order to prove that the money in question was "stolen" for purposes of the NSPA, the Government was required to prove that Merz or her brother Christopher McGuigan—the only heirs of their mother Annelise McGuigan ("Annelise")—stole it from themselves or each other, but the Government's "only theory on this point was that" they stole it from Annelise's estate. *Id.* at 21.

The theory of liability under the NSPA on which the Government relied in charging Merz provides that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any . . . money, of the value of $5,000 or more, knowing the same to have been stolen, converted or

2

taken by fraud . . . [s]hall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 2314. "The meaning of the word 'stolen' as used in this statute [has been] relatively well-established" for almost sixty years. *See United States v. Long Cove Seafood, Inc.*, 582 F.2d 159, 163 (2d Cir. 1978) (citing *United States v. Turley*, 352 U.S. 407 (1957)). In *United States v. Turley*, the Supreme Court considered "whether the meaning of the word 'stolen' . . . is limited to a taking which amounts to common-law larceny, or whether it includes an embezzlement or other felonious taking with intent to deprive the owner of the rights and benefits of ownership." 352 U.S. at 408.[1] The Court settled on the latter answer, favoring "the broader interpretation." *Id.*

The Court's holding that money is "stolen" for purposes of the NSPA if it is embezzled is particularly significant here, because Vermont law provides that an "administrator who embezzles . . . money . . . belonging to the estate of which he or she is . . . administrator . . . shall be guilty of larceny and shall be imprisoned not more than 10 years or fined not more than $1,000.00, or both." Vt. Stat. Ann. tit. 13, § 2534 (2016); *see Walker v. Hendee*, 137 A. 334, 335 (Vt. 1927) (describing a predecessor statute to Section 2534 as "making the . . . embezzlement of the funds of an estate by an executor a felony"). Thus, under Vermont law, money may "belong[ ] to [a Vermont probate] estate," and an administrator may "embezzle[ ]" it therefrom. Accordingly, money may be "stolen" from a Vermont probate estate for purposes of the NSPA. *See United States v. Schultz*, 333 F.3d 393, 399 (2d Cir. 2003) ("Goods that belong to a[n] . . . entity and are taken from that . . . entity without its consent are 'stolen' in every sense of that word."); *id.* at 403 (characterizing *United States v. Handler*, 142 F.2d 351 (2d Cir. 1944), as holding "that embezzled property is 'stolen' within the meaning of the NSPA").[2]

The only remaining question, then, is whether the money at issue "belonged" to Annelise's estate at the time it was allegedly stolen. The very cases that Merz cites in support of her argument establish that it did. For example, Merz quotes *Lysak v. Grull*, 812 A.2d 840 (Vt. 2002), for the proposition that title to property "vests immediately at death in the heirs, subject only to liens and legally enforceable debts of the estate." *Id.* at 843. But just two sentences later, *Lysak* reads as follows: "However, until such time as the estate is probated, and the debts of the estate are settled, the heir cannot demand either title to or possession of the property." *Id.*

---

[1] In *Turley*, the Supreme Court construed the word "stolen" as used in the National Motor Vehicle Theft Act ("NMVTA"), 18 U.S.C. § 2312, not the NSPA, but the case is nevertheless "controlling here because the word 'stolen' is used in the same way in both" statutes. *Long Cove Seafood*, 582 F.2d at 163.

[2] In *Schultz*, we interpreted Section 2315 and not Section 2314 of the NSPA, but "[o]ur precedent interpreting [Section 2315] is persuasive in considering [Section 2314], as the two sections merely address different aspects of the same type of criminal behavior, namely dealing in stolen property, and both are part of the same legislative scheme." 333 F.3d at 402 n.3.

3

Thus, whatever interest an estate has in a decedent's money that renders the money susceptible to embezzlement exists at least until the estate's debts are settled. Here, it is undisputed that the debts of Annelise's estate were not settled when the money was allegedly stolen. Accordingly, the money "belonged" to Annelise's estate at that time. For these reasons, we find Merz's first argument unpersuasive, and affirm the District Court's judgment with respect to Counts One, Two, and Three.[3]

## II.    Count Four

We turn now to Merz's second argument. As discussed above, Merz was charged in Count Four with uttering a forged security with the intent to deceive another person and organization, in violation of 18 U.S.C. §§ 513(a) and 2. Merz argues that "[t]he forgery charge was based on the fact that [she] signed her brother's signature on" TD Bank withdrawal slips, but "[b]ecause a withdrawal slip is not a security [for purposes of Section 513(a)], [she] was entitled to a judgment of acquittal on this count." Def.'s Br. 35. We agree.

In pertinent part, Section 513(a) provides that "[w]hoever makes, utters or possesses a forged security . . . of an organization, with intent to deceive another person . . . [or] organization . . . shall be fined under this title or imprisoned for not more than ten years, or both." 18 U.S.C. § 513(a). Section 513(c)(3) defines "security" for purposes of Section 513(a) as follows:

> (A) a note, stock certificate, treasury stock certificate, bond, treasury bond, debenture, certificate of deposit, interest coupon, bill, check, draft, warrant, debit instrument as defined in section 916(c) of the Electronic Fund Transfer Act, money order, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate, pre-reorganization certificate of subscription, transferable share, investment contract, voting trust certificate, or certificate of interest in tangible or intangible property;
>
> (B) an instrument evidencing ownership of goods, wares, or merchandise;
>
> (C) any other written instrument commonly known as a security;
>
> (D) a certificate of interest in, certificate of participation in, certificate for, receipt for, or warrant or option or other right to subscribe to or purchase, any of the foregoing; or
>
> (E) a blank form of any of the foregoing . . . .

---

[3] "[G]iven the clarity of the state law" on this subject, *Morenz v. Wilson-Coker*, 415 F.3d 230, 237 n.6 (2d Cir. 2005), we decline Merz's request that we certify to the Vermont Supreme Court the question her first argument presents.

4

18 U.S.C. 513(c)(3).

The Government argues that "[c]ommon sense principles of interpretation, statutory text, case law, and evidence at trial support the conclusion that withdrawal slips are securities under section 513." Government Br. 41. To the contrary, basic principles of statutory interpretation support the conclusion that they are not.

Specifically, "the well-known canon of *expressio unius est exclusio alterius*—'the express mention of one excludes the other,'" *In re Lehman Bros., Inc.*, 791 F.3d 277, 288 (2d Cir. 2015)—guides our inquiry. Section 513(c)(3)(A) names no fewer than 26 instruments that qualify as securities. "Noticeably absent from this list," *Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011), however, is a withdrawal slip. The Government has not offered any reason why this "item unmentioned would [not] normally be associated with [the] items listed," *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 169 n.12 (2003), nor can we think of any. Accordingly, we assume that Congress intended to exclude it.

Of course, the fact that Congress did not name a withdrawal slip in Section 513(c)(3)(A) does not end our analysis, as Section 513(c)(3) contains other "catch-all" categories, including subsections (B) ("an instrument evidencing ownership of goods, wares, or merchandise") and (C) ("any other written instrument commonly known as a security"). But the Government does not argue that a withdrawal slip falls within either, seemingly for good reason. *Cf. United States v. Aleynikov*, 676 F.3d 71, 78 (2d Cir. 2012) ("Money . . . is specifically enumerated in [18 U.S.C.] § 2314 as a thing apart and distinct from 'goods,' 'wares,' or 'merchandise.'").

Instead, the Government argues that the withdrawal slips are "securities" because, "[f]rom Merz's perspective, [they] were a clear substitute for, and functionally equivalent to[,] checks," which are explicitly mentioned in Section 513(c)(3)(A). Government's Br. 45. This supposed functional equivalence is based on the fact that checks, like withdrawal slips, "represent tools for bank customers to withdraw money from their accounts." *Id.* As the District Court put it, "[t]here would be scant logic in a statutory interpretation of 'security' that prohibited a forgery in conjunction with an *actual check*, but permitted it if the forgery only pertained to something *used as a check*." *United States v. Merz*, No. 5:14-CR-32-1 (CCR), 2015 WL 2452454, at *14 (D. Vt. May 21, 2015) (emphases in original). Thus, Section 513(a)'s "legislative purpose is furthered by treating the withdrawal slips as 'securities' because they constituted a demand for money that was used for illegal purposes." *Id.*

In response, Merz describes a number of potentially significant differences between checks and withdrawal slips. *See* Def.'s Br. 43–46. Even putting aside these possible bases of distinction, however, the point remains that a withdrawal slip is simply not listed in Section 513(c)(3)(A), nor has the Government argued that it is encompassed by Sections 513(c)(3)'s other subsections.

"Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. C.I.R.*, 464 U.S. 386, 398 (1984). Rather, our "role . . . is to

apply the statute as it is written—even if we think some other approach might accord with good policy." *Burrage v. United States*, 134 S. Ct. 881, 892 (2014) (alterations and internal quotation marks omitted). When Congress defined the term "security" in Section 513(c)(3), "it employed specific language." *C.I.R. v. Canfield's Estate*, 306 F.2d 1, 7 (2d Cir. 1962). That specific language does not include a subsection (F) extending that definition to any instrument "constitut[ing] a demand for money that was used for illegal purposes," *Merz*, 2015 WL 2452454, at \*14, and we will not graft such a subsection onto the statute merely because the Government believes that withdrawal slips are analogous in some arguably meaningful way to instruments actually enumerated therein. We therefore reverse the District Court's judgment with respect to Count Four and remand the cause for such further proceedings as may be necessary and appropriate in view of this order, including resentencing.[4]

Lest this order be misunderstood, we do not hold that a withdrawal slip is not a "security" for purposes of Section 513(a) as a matter of law. For example, we do not foreclose the possibility that, in a given prosecution, the Government could prove that a withdrawal slip is encompassed by one of Section 513(c)(3)'s "catch-all" categories. *See* 18 U.S.C. § 513(c)(3)(B)–(E). We hold only that the Government has failed to prove that a withdrawal slip is so encompassed here. *Cf. United States v. Rogers*, 9 F.3d 1025, 1033 (2d Cir. 1995) ("[P]rovided there was sufficient evidence in the case . . . , [the defendant] was entitled to have the judge instruct the jury on what a security is and to let the jury decide whether the items at issue were securities.").

### III.   Prejudicial Spillover

Lastly, we reject Merz's argument that, because we are reversing the District Court's judgment with respect to Count Four, our "rules regarding prejudicial spillover . . . require a retrial" on the other counts. Def.'s Br. 48. "In analyzing a claim of prejudicial spillover, we consider (1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts, (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong." *United States v. Jones*, 482 F.3d 60, 78 (2d Cir. 2006) (internal quotation marks omitted). While the second of these factors cuts in favor of Merz, the first and third cut sharply against her. She admits that "there is

---

[4] We note that the principal case on which the Government relies in arguing that a withdrawal slip is a security is *United States v. Dos Reis*, 113 F.3d 1230 (2d Cir. 1997) (summary order). *See* Government's Br. 42, 46–47. The Government's reliance on *Dos Reis* is not only misplaced—its very citation to the case is prohibited by this Court's Local Rule 32.1.1, which provides that summary orders issued prior to January 1, 2007 may be cited only "in a subsequent stage of a case in which the summary order has been entered, in a related case, or in any case for purposes of estoppel or res judicata; or . . . when a party cites the summary order as subsequent history for another opinion that it appropriately cites." 2d Cir. R. 32.1.1 (citation of summary orders).

little about the case that could be described as inflammatory," Def.'s Br. 49, and on review of the entire record before us, we conclude that the Government's evidence on Counts One, Two, and Three was strong.

## CONCLUSION

We have considered all of Merz's other arguments on appeal and found them to be without merit. Accordingly, the July 28, 2015 judgment of the District Court is **AFFIRMED** in part, insofar as Merz's convictions on Counts One, Two, and Three are concerned; **REVERSED** in part, insofar as Merz's conviction on Count Four is concerned; and **REMANDED** for such further proceedings as may be appropriate and consistent with this order, including resentencing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7