[897 NE2d 116, 867 NYS2d 716]

In the Matter of DOMINICK GIAQUINTO, Appellant, v COMMISSIONER OF NEW YORK STATE DEPARTMENT OF HEALTH, Respondent, et al., Respondent.

Argued May 1, 2008; decided June 12, 2008

**POINTS OF COUNSEL**

*Pierro Law Group, LLC,* Albany (*Louis W. Pierro* of counsel), for appellant. I. Petitioner is entitled to an award of attorney's fees under 42 USC §§ 1983 and 1988 as a successful litigant in a CPLR article 78 proceeding against a state official for the wrongful denial of ongoing Medicaid benefits. (*Matter of Thomasel v Perales,* 78 NY2d 561; *Maine v Thiboutot,* 448 US 1; *Morenz v Wilson-Coker,* 321 F Supp 2d 398, 415 F3d 230; *Matter of Haussman v Kirby,* 96 AD2d 244; *Matter of Buhania,* 187 Misc 2d 312; *Matter of Levandusky v One Fifth Ave. Apt. Corp.,* 75 NY2d 530; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Lopez v Commissioner of N.Y. State Dept. of*

*Health,* 42 AD3d 638; *Matter of Cleary v Perales,* 191 AD2d 209; *Matter of Johnson v Blum,* 58 NY2d 454.) II. Petitioner's claim is against a state official for prospective relief, and is not barred by the Eleventh Amendment. (*Ex parte Young,* 209 US 123; *Edelman v Jordan,* 415 US 651; *Milliken v Bradley,* 433 US 267; *New York City Health & Hosps. Corp. v Perales,* 50 F3d 129; *Maher v Gagne,* 448 US 122; *Morenz v Wilson-Coker,* 321 F Supp 2d 398; *Matter of Klapak v Blum,* 97 AD2d 764; *Matter of Aviles v D'Elia,* 97 AD2d 821; *Matter of Daniels v Hammons,* 228 AD2d 341; *Matter of Feliz v Wing,* 285 AD2d 426.)

*Andrew M. Cuomo, Attorney General,* Albany (*Victor Paladino, Barbara D. Underwood* and *Andrea Oser* of counsel), for New York State Department of Health, respondent. I. Petitioner cannot obtain an attorney's fee under 42 USC § 1988 because he obtained no determination regarding the merit of his federal statutory claim and that claim lacks merit. (*Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.,* 80 NY2d 531; *Matter of Johnson v Blum,* 58 NY2d 454; *Matter of Guido v New York State Teachers' Retirement Sys.,* 94 NY2d 64; *Matter of Thomasel v Perales,* 78 NY2d 561; *Town of Mount Pleasant v Legion of Christ, Inc.,* 7 NY3d 122; *Matter of Charles A. Field Delivery Serv. [Roberts],* 66 NY2d 516; *People ex rel. Matthews v New York State Div. of Parole,* 95 NY2d 640; *Matter of Seitelman v Lavine,* 36 NY2d 165; *Persky v Bank of Am. Natl. Assn.,* 261 NY 212; *Matter of Lynch v Commissioner of N.Y. State Dept. of Health,* 18 Misc 3d 1113[A], 2008 NY Slip Op 50015[U].) II. Petitioner's federal statutory claim provides no predicate for fees because it asserts no claim against a "person" within the meaning of 42 USC § 1983. (*Will v Michigan Dept. of State Police,* 491 US 58; *Haywood v Drown,* 9 NY3d 481; *Hafer v Melo,* 502 US 21; *Ex parte Young,* 209 US 123; *Green v Mansour,* 474 US 64; *Ford v Reynolds,* 316 F3d 351; *Verizon Md. Inc. v Public Serv. Comm'n of Md.,* 535 US 635; *Idaho v Coeur d'Alene Tribe of Idaho,* 521 US 261; *State Empls. Bargaining Agent Coalition v Rowland,* 494 F3d 71; *Kostok v Thomas,* 105 F3d 65; *Sonnleitner v York,* 304 F3d 704.)

*Empire Justice Center,* Albany (*Susan C. Antos* of counsel), amicus curiae pro se and *Peter Dellinger,* Rochester, for Empire Justice Center, amicus curiae. The Third Department improperly categorized the type of relief sought and obtained by plaintiff in his CPLR article 78 petition as "retrospective benefits," when in fact the relief obtained was predominantly prospective. (*Edelman v Jordan,* 415 US 651; *Ex parte Young,* 209 US 123; *Will v*

*Michigan Dept. of State Police,* 491 US 58; *Quern v Jordan,* 440 US 332; *Milliken v Bradley,* 433 US 267; *Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v State of New York,* 940 F2d 766; *Pauk v Board of Trustees of City Univ. of N.Y.,* 68 NY2d 702; *LaDuke v Lyons,* 250 AD2d 969; *ABC Radio Network v State of N.Y. Dept. of Taxation & Fin.,* 294 AD2d 213; *Matter of Adams v Welch,* 272 AD2d 642.)

*Vollmer & Tanck, P.C.,* Jericho (*Peter Vollmer* of counsel), for Peter Vollmer, amicus curiae. Imposition of sovereign immunity on the facts of this appeal will erode private bar interest in the representation of the poor and undermine the stated intent and purpose of 42 USC § 1988. (*Blum v Stenson,* 465 US 886; *McMahon v Novello,* 192 F Supp 2d 54; *Calkins v Blum,* 511 F Supp 1073; *Matter of Martinez v Perales,* 135 AD2d 818, 77 NY2d 923; *Matter of Cleary v Perales,* 191 AD2d 209; *Matter of Palmer v New York State Dept. of Social Servs.,* 125 AD2d 977; *Matter of Klapak v Blum,* 97 AD2d 764; *Matter of Haussman v Kirby,* 96 AD2d 244; *Catanzano v Dowling,* 847 F Supp 1070, 60 F3d 113.)

*National Center for Law and Economic Justice, Inc.,* New York City (*Henry A. Freedman* and *Lynn D. Lu* of counsel), amicus curiae pro se. I. The Third Department's reversal of the award of 42 USC § 1988 attorney's fees is contrary to federal and state decisional authority and should be reversed. (*Richardson v McKnight,* 521 US 399; *Will v Michigan Dept. of State Police,* 491 US 58; *Verizon Md. Inc. v Public Serv. Comm'n of Md.,* 535 US 635; *Green v Mansour,* 474 US 64; *Ex parte Young,* 209 US 123; *Matter of Martinez v Perales,* 135 AD2d 818, 77 NY2d 923; *Matter of Klapak v Blum,* 97 AD2d 764; *Matter of Aviles v D'Elia,* 97 AD2d 821; *Matter of Haussman v Kirby,* 96 AD2d 244.) II. The reversal of a decision after fair hearing is not retrospective relief that improperly invades the state treasury. (*Edelman v Jordan,* 415 US 651; *Morenz v Wilson-Coker,* 415 F3d 230; *Klaips v Bergland,* 715 F2d 477; *Seittelman v Sabol,* 91 NY2d 618; *Greenstein v Bane,* 833 F Supp 1054; *Salazar v District of Columbia,* 954 F Supp 278.) III. The primary relief granted to appellant was prospective relief available against state officials pursuant to section 1983 to remedy an ongoing violation of federal rights. (*State Empls. Bargaining Agent Coalition v Rowland,* 494 F3d 71; *Morenz v Wilson-Coker,* 321 F Supp 2d 398, 415 F3d 230; *Matter of Rivera v Trimarco,* 36 NY2d 747; *Kostok v Thomas,* 105 F3d 65; *Elliott v Hinds,* 786 F2d 298.)

## OPINION OF THE COURT

JONES, J.

At issue is whether petitioner is entitled to recover attorney's fees from respondent Commissioner of the New York State Department of Health (DOH) under 42 USC § 1988 (b) or whether such claim is barred under the Eleventh Amendment.

Although we see no impediment under Eleventh Amendment sovereign immunity to petitioner recovering attorney's fees from respondent, we cannot conclude that Supreme Court in fact awarded petitioner relief on federal grounds. Accordingly, we remit this matter to Supreme Court for a determination of (1) petitioner's claim that respondent's calculation of his wife's "community spouse resource allowance" (CSRA) violated a provision of the federal Medicaid Act (42 USC § 1396r-5 [e] [2] [C]) and (2) petitioner's request for section 1988 attorney's fees.

## Facts and Procedural History

In October 2004, petitioner, a resident in an adult care facility, applied to the Montgomery County Department of Social Services (DSS) seeking Medicaid benefits for nursing facility services commencing August 1, 2004.[1] Petitioner's application was denied because he and his wife, who still resided in their marital residence, had household income and resources in excess of permissible limits for Medicaid eligibility. On November 16, 2004, petitioner requested an administrative fair hearing with DOH, seeking a reversal of DSS's denial of his application and to establish an increased CSRA for his wife, the "community spouse."[2] The hearing was held before an Administrative Law Judge (ALJ) the following month.

---

1. As we stated in *Matter of Tomeck* (8 NY3d 724, 727-728 [2007]), "Medicaid, a joint federal-state program established pursuant to title XIX of the Social Security Act (42 USC § 1396 *et seq.*), pays for medical care for those unable to afford it, including nursing home care for medically needy older people who become eligible by incurring medical expenses that reduce their monthly income and assets below prescribed levels. Ordinarily, a local Medicaid agency employee calculates an applicant's income and resources to figure out how much must be reduced or 'spent down' in order for the applicant to meet the financial criteria to qualify for Medicaid benefits (*see* 42 USC § 1396r-5 [c] [1] [B]; Social Services Law § 366-c [7]; 18 NYCRR 360-4.8 [c])."

2. Under the Medicare Catastrophic Coverage Act of 1988 (42 USC § 1396r-5), "Congress adopted the spousal impoverishment provisions, a complex set of standards governing the allocation of resources

On April 14, 2005, respondent, through the ALJ as her designee, issued a fair hearing decision affirming DSS's denial of petitioner's Medicaid application based on excess income and resources. The fair hearing decision held that petitioner's wife was entitled to an increased CSRA. Because the ALJ found that petitioner wife's income was below the minimum monthly maintenance needs threshold, the matter was remanded to Montgomery County so that DSS could determine how much of petitioner's excess resources petitioner's wife would need in order to purchase a "single premium immediate life annuity" to generate sufficient income to raise petitioner's wife's income to the threshold amount.

In December 2005, petitioner commenced this CPLR article 78 proceeding against respondent in her official capacity as the head of a state agency, alleging that respondent's determination requiring petitioner's wife to purchase a "single premium immediate life annuity" was arbitrary and capricious and in violation of 42 USC § 1396r-5 (e) (2) (C),[3] and that, by such a deter-

---

between the spouse residing in a nursing home (the institutionalized spouse) and the [community spouse]. In general, these provisions are designed to insure that the community spouse retains necessary, but not excessive, income and assets, which do not need to be depleted to make the institutionalized spouse eligible for Medicaid. In [enacting this legislation], Congress sought to protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance" (*Tomeck*, 8 NY3d at 728 [citations and internal quotation marks omitted]).

Under federal and state law, the "community spouse" is entitled to a minimum level of monthly income, referred to as the "minimum monthly maintenance needs allowance" (*see* 42 USC § 1396r-5 [d] [3]; Social Services Law § 366-c [2] [h]) and a CSRA (*see* 42 USC § 1396r-5 [f] [2]; Social Services Law § 366-c [2] [d]). In determining whether an "institutionalized" spouse is Medicaid eligible, the only resources of the couple taken into account are those in excess of the CSRA (*see* 42 USC § 1396r-5 [c] [2]).

3. Regarding his federal claim, petitioner specifically alleged that:
"Pursuant to federal law, if the [CSRA] is inadequate to raise the community spouse's income to the [minimum monthly maintenance needs allowance], **'there shall be substituted** for the [CSRA] under subsection (f) (2) of this section, an amount adequate to provide such a minimum monthly maintenance needs allowance.' 42 U.S.C. § 1396r-5(e)(2)(C) (emphasis added).

"[ ]The Respondents erroneously remanded the case to the [DSS] 'so that it can determine how much of the excess resources are needed to purchase a single premium immediate life annuity to generate sufficient monthly income to raise the community spouses's total available income up to the [minimum monthly

mination, DOH created a new rule in violation of State Administrative Procedure Act § 202.[4] The petition sought a judgment (1) annulling the fair hearing decision, (2) directing respondent to find petitioner eligible for Medicaid retroactive to the date requested in his original application and (3) determining that petitioner's wife could retain all of her resources as of that date. Petitioner also sought attorney's fees under 42 USC §§ 1983 and 1988.

Supreme Court granted the petition, stating

> "[DOH] clearly stated that it lacked any legal basis or authorization to direct a community or institutionalized spouse to purchase a particular type of investment. In this action, [DOH] has not explained its change of methodology in the calculation of the CSRA for the community spouse. When an agency alters its prior policy and interpretation of law, it must explain its reasons for doing so or its determination shall be reversed on the law as arbitrary. *Matter of Charles A. Field Deliver[y] Service, Inc.*, 66 NY 2d 516 (1985)."

In short, the court found that with respect to DOH's calculation of the CSRA, respondent failed to adhere to its own precedent without providing the required explanation. Thus, the court concluded that respondent's determination that petitioner's wife purchase a single premium immediate life annuity lacked a rational basis, was arbitrary and capricious, and had no basis in law. The court further determined that respondent had no authority to utilize the employed annuity method to calculate income or resource allowances or to direct applicants to pursue any particular type of investment. Finally, the court vacated the fair hearing decision and respondent's April 2005 determination, awarded petitioner attorney's fees and stated that "[a]ny relief not specifically granted is denied." Respondent originally appealed from Supreme Court's entire judgment. Although the appeal on the merits was subsequently withdrawn, respondent continued to oppose the award of attorney's fees.

The Appellate Division reversed petitioner's fee award. The court noted that under 42 USC § 1988 (b) courts may award at-

---

maintenance needs allowance] for the period of August 1, 2004 ongoing.' "

4. Although named as a respondent in this proceeding, the Montgomery County Commissioner of Social Services did not oppose the petition in Supreme Court or appear at the Appellate Division.

torney's fees to parties who prevail in a suit to enforce their rights under 42 USC § 1983 or who prevail on state grounds, but have a valid federal claim. The court further noted that under section 1983, state officers may be sued in their official capacities when the petitioner seeks only "injunctive or prospective relief to prevent a continuing violation of the law" (39 AD3d 922, 924 [2007]). The court concluded that "the relief sought by petitioner was retrospective, remedying a prior erroneous decision, even though a grant of such relief would result in his eligibility for and receipt of benefits in the future" (id.). Accordingly, the court held that petitioner failed to prevail against respondent on a claim under section 1983 and therefore was not entitled to an award of counsel fees under section 1988. We granted petitioner leave to appeal and now reverse and remit to Supreme Court for a determination of petitioner's section 1396r-5 claim and request for attorney's fees under section 1988.

## Discussion

42 USC § 1988 (b) provides that in any action or proceeding to enforce a provision of section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, . . . reasonable attorney's fee[s] as part of the costs."[5] A citizen of the United States may bring a section 1983 claim against a "person" who, under color of state law, "subjects, or causes to be subjected, [the citizen] to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws" (42 USC § 1983). Although a "person" under

---

5. Regarding 42 USC § 1988, we stated:

"Congress recognized that attorney's fees are an 'integral part of the remedy necessary to achieve compliance' with civil rights laws such as 42 USC § 1983 (S Rep No. 1011, 94th Cong, 2d Sess, at 3 [reprinted in 1976 US Code Cong & Admin News 5910]). In furtherance of that goal, Congress enacted the Civil Rights Attorney's Fees Awards Act in 1976 (Pub L 94-559, § 2, codified at 42 USC § 1988) . . .

"In keeping with this remedial objective, we have liberally construed section 1988 (Matter of Johnson v Blum, 58 NY2d 454, 459). While the statute intones 'discretion,' the legislative history and judicial precedents emphasize that '[a] party seeking to enforce the rights protected by the statutes covered by [section 1988], if successful, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' (S Rep No. 1011, 94th Cong, 2d Sess, at 2, 4 [reprinted in 1976 US Code Cong & Admin News 5912] . . . .)" (Matter of Thomasel v Perales, 78 NY2d 561, 567 [1991].)

section 1983 "shall [generally] be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" (*id.*), petitioner here sued respondent in her official capacity as the head of a state agency. Accordingly, the Eleventh Amendment to the Federal Constitution bears on whether petitioner will be entitled to an award of section 1988 attorney's fees.

Eleventh Amendment

Under the Eleventh Amendment, which sets forth the doctrine of sovereign immunity, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." It is well settled that the Eleventh Amendment bars "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury" (*Edelman v Jordan*, 415 US 651, 663 [1974]). Further, under Eleventh Amendment sovereign immunity, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" (*Will v Michigan Dept. of State Police*, 491 US 58, 71 [1989]).

The United States Supreme Court has, however, carved out a narrow exception to this rule. In *Ex parte Young* (209 US 123, 159-160 [1908]), the Court held that

"[i]f the act which the state [officer] seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States" (citation omitted).

In *Papasan v Allain* (478 US 265 [1986]), the Supreme Court, synthesizing a number of its prior decisions interpreting *Young*, stated:

"*Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United

States. Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. . . . Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment. . . .

"[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury. . . .

"For Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct . . . In discerning on which side of the line a particular case falls, we look to the substance rather than to the form of the relief sought, and will be guided by the policies underlying the decision in *Ex Parte Young*" (*Papasan*, 478 US at 277-279 [citations and internal quotation marks omitted]).

In short, relief that serves to remedy a past violation of the law is retrospective in nature. On the other hand, prospective relief seeks to end an ongoing or future violation of law. State officials acting in their official capacities may only be sued for injunctive or prospective relief (*see Will*, 491 US at 71 n 10 ["a state official in his or her official capacity, when sued for injunctive relief, (is) a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State" (internal quotation marks omitted)]; *see also Huminski v Corsones*, 396 F3d 53, 70 [2d Cir 2005] ["state officials cannot be sued in their official capacities for retrospective relief under Section 1983 . . . (but) can be subject to suit in their official capacities for injunctive or other prospective relief"]).

Here, petitioner casts the relief he sought as prospective because it would result in his ongoing entitlement to current

and future Medicaid benefits, which neither party disputes and, therefore, would end respondent's ongoing violation of federal law. The fact that petitioner's Medicaid eligibility would be retroactive to the date requested in his application is only incidental to the primary relief sought, namely, the annulment of the fair hearing decision. Respondent counters that the relief petitioner sought was retrospective in that it merely sought to remedy a prior erroneous decision even though the grant of such relief would entitle petitioner to benefits in the future. Respondent's argument is unavailing.

■ In light of *Young* and its progeny, we agree with petitioner and hold that the relief petitioner sought was prospective in nature; accordingly, the Eleventh Amendment does not bar petitioner's suit against respondent. In seeking to annul the fair hearing decision, petitioner sought not only to stop an ongoing violation of federal law by a state official acting in her official capacity, but to vindicate his right to Medicaid eligibility under the federal law and receive ongoing current and future Medicaid payments. The relief sought also had the effect of vindicating the federal interest in assuring the supremacy of the federal Medicaid Act (*see Papasan*, 478 US at 278). Respondent's argument minimizes the importance of the federal right sought to be vindicated and elevates the form of the relief sought over its substance, contrary to the Supreme Court's direction to courts considering whether a suit is or is not barred by the Eleventh Amendment (*id.* at 279).[6]

Finally, there is a split in Circuit Court authority regarding the Eleventh Amendment issue before us (*compare Tekkno Labs., Inc. v Perales*, 933 F2d 1093 [2d Cir 1991] [holding that Medicaid provider, who brought a section 1983 claim challenging New York State's withholding of payment of claims and sought a preliminary injunction requiring the State to cease such activity, sought retrospective relief barred by the Eleventh Amendment], *with Morenz v Wilson-Coker*, 415 F3d 230 [2d Cir 2005] [Plaintiff sought injunctive and declaratory relief after

---

**6.** Additionally, the following factors militate in favor of our determination that petitioner sought prospective relief: (1) this Court liberally construes section 1988 claims for attorney's fees, as section 1988 is meant to encourage "the availability of needed legal assistance to individuals whose rights have been violated and who require vindication" (*Thomasel*, 78 NY2d at 570); and (2) without the possibility of an attorney's fees award, indigent Medicaid applicants who allege that they were wrongfully denied Medicaid benefits could not secure the representation needed to vindicate their rights and would effectively be left without a remedy.

the State of Connecticut denied his Medicaid application based on his wife's excess resources. Court held award of Medicaid benefits beginning three months prior to date husband was deemed Medicaid eligible was not retroactive relief in violation of the Eleventh Amendment] and *Kostok v Thomas*, 105 F3d 65, 69 [2d Cir 1997] [In holding that plaintiff's suit for injunctive relief compelling that State of Connecticut furnish him with a new wheelchair customized to his special needs was not violative of the Eleventh Amendment, Court stated, "(plaintiff) seeks relief that is truly prospective: a wheelchair from this time forward. The relief cannot be deemed retroactive simply because it costs money"]).

However, the Second Circuit has recently sanctioned awards of section 1988 attorney's fees under circumstances similar to those presented here (*see Morenz* and *Kostok*),[7] and we agree with those decisions. In light of the state-federal nature of the Medicaid programs and the fact that federal Medicaid claims can be brought in both state and federal courts, agreement between this Court and the Second Circuit on the Eleventh Amendment issue at bar would allay forum shopping concerns (i.e., those seeking Medicaid benefits would [1] have the security of knowing that the relevant substantive law does not differ between the state and federal forums and [2] be less inclined to choose between the two forums based on how favorable the relevant substantive law is).

## Supreme Court Did Not Clearly Award Relief on Federal Grounds

In *Farrar v Hobby* (506 US 103 [1992]), the Supreme Court stated:

> "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of judgment or settlement. Otherwise the judg-

---

**7.** Although the specific relief requested here is different from the injunctive relief requested in *Morenz* and *Kostok*, all three cases are similar in the following respects: (1) the relief requested would entitle petitioner/plaintiff to benefits in the future; and (2) the award of retroactive benefits was ancillary to the primary award.

ment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff. Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party. In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff" (*id.* at 111-112 [brackets, citations and internal quotation marks omitted]).

Regarding section 1988 counsel fees, we have stated:

"[A]ttorney's fees are available under section 1988 where relief is sought on both State and Federal grounds, but nevertheless awarded on State grounds only. In such a case, if a constitutional question is involved, fees may be awarded if the constitutional claim is substantial and arises out of a common nucleus of operative fact as the State claim" (*Thomasel*, 78 NY2d at 568 [citations and internal quotation marks omitted]).

However, where "a [petitioner] joins a claim under one of the federal statutes covered by the Fees Act with a claim that does not allow attorney fees, that [petitioner,] if it prevails on the non-fee claim, is entitled to a determination on the other claim [if nonconstitutional] for the purpose of awarding attorney fees" (*Matter of Johnson v Blum*, 58 NY2d 454, 458 n 2 [1983]).[8] Thus, under *Johnson*, petitioner is entitled to a determination of his section 1983 claim.

Here, petitioner's request for attorney's fees was premised on his claim that respondent's calculation of the CSRA violated a specific federal Medicaid Act provision, namely 42 USC § 1396r-5 (e) (2) (C). However, Supreme Court made no determination that respondent violated this statutory provision, i.e., it did not award petitioner any relief on the merits of his federal claim. Consequently, Supreme Court made no determination of

---

8. The distinction between federal constitutional claims and federal statutory claims is drawn so that courts may avoid reaching constitutional issues solely for purposes of deciding requests for fees (*see Johnson*, 58 NY2d at 458 n 2). However, the Appellate Division did not acknowledge this difference. Instead, the court conflated this distinction and mistakenly found that Supreme Court had discretion to consider whether section 1988 counsel fees should be awarded.

petitioner's section 1983 claim; it annulled the fair hearing decision and, as a result of the annulment, petitioner became Medicaid eligible, but it stated no clear federal basis for its decision. In other words, Supreme Court appeared to resolve this matter solely on state law grounds instead of addressing the issue whether DOH's determination and remand to DSS violated a specific provision of the federal Medicaid Act.

▮ Thus, on this record, we cannot conclude, as a threshold matter, whether there was a federal predicate for Supreme Court's award of attorney's fees to petitioner or that petitioner was a "prevailing party" within the meaning of 42 USC § 1988 (b) as it is not clear that Supreme Court awarded petitioner relief on his 42 USC § 1396r-5 claim on federal grounds (i.e., it is not clear that petitioner prevailed against respondent on a claim under 42 USC § 1983). Further, it is not apparent whether Supreme Court determined that DOH was a "person" which, while acting under color of state law, deprived petitioner of the federal right to Medicaid. In the absence of the foregoing, Supreme Court did not have discretion to award attorney's fees here.[9]

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

PIGOTT, J. (dissenting). I respectfully dissent. In my view, the record is sufficient to conclude that respondent's calculation of petitioner's wife's "community spouse resource allowance" (CSRA) did not violate federal Medicaid law. Accordingly, remittal is unnecessary and unwarranted. I would therefore affirm the order of the Appellate Division on different grounds.

The primary relief sought by petitioner in this proceeding

---

**9.** The dissent's reliance on *Matter of Lynch v Commissioner of N.Y. State Dept. of Health* (18 Misc 3d 1113[A], 2008 NY Slip Op 50015[U] [Sup Ct, Albany County, Jan. 9, 2008]) is misplaced. In *Matter of Lynch,* Supreme Court's decision regarding DOH's broad discretion to select a reasonable methodology for determining the CSRA was expressly based on a *July 27, 2006* interpretation of 42 USC § 1396r-5 (e) by the Centers for Medicare and Medicaid Services (CMS), which the dissent quotes. Here, however, the federal issue is whether respondent's *April 2005* determination regarding petitioner's application for benefits was lawful under the federal Medicaid Act. Because CMS's regulatory interpretation was *not* issued prior to petitioner's administrative fair hearing or respondent's determination, the dissent's primary justification for deciding the federal issue as a matter of law without further record development or argument is mooted.

was to overturn the denial of his Medicaid application. That relief was granted by Supreme Court. As explained by the majority, Supreme Court premised its decision on state law, holding that respondent's determination lacked a rational basis, was arbitrary and capricious, and had no basis in law. Supreme Court explained that, on a prior occasion, the Department of Health (DOH) stated that it lacked the authority to direct Medicaid applicants to purchase a particular type of investment. In this case, however, respondent required petitioner's wife to purchase a "single premium immediate life annuity" to attain the "minimum monthly maintenance needs allowance" (MMMNA). Supreme Court concluded that respondent failed to explain "its change of methodology in the calculation of the CSRA for the community spouse," which an agency is required to do when it "alters its prior policy and interpretation of law." Supreme Court never addressed petitioner's further argument that respondent's actions violated federal Medicaid law.

Assuming, as the majority does, that *Matter of Johnson v Blum* (58 NY2d 454, 458 n 2 [1983]) requires courts to determine a federal statutory law claim "for the purpose of awarding attorney fees" where a litigant already prevailed on a dispositive state law claim, then this Court should determine whether a federal law predicate exists for awarding attorney's fees to petitioner under 42 USC § 1988 (b), i.e., whether respondent's calculation of the CSRA violated 42 USC § 1396r-5 (e) (2) (C). In my view, on this record, no federal predicate exists for the awarding of attorney's fees, rendering it unnecessary to remit this matter to Supreme Court for a determination as to whether an alternative ground—i.e., a federal law ground—existed for granting the petition and annulling respondent's determination.

In the petition, petitioner alleged that respondent violated 42 USC § 1396r-5 (e) (2) (C) by directing the Montgomery County Department of Social Services to determine how much excess resources are needed to purchase a single premium immediate life annuity as a means to generate sufficient monthly income to raise petitioner's wife's income to the MMMNA level. That provision of the Medicaid law, entitled "[r]evision of community spouse resource allowance," provides:

> "If either such spouse establishes that the community spouse resource allowance (in relation to the amount of income generated by such an allowance) is inadequate to raise the community spouse's

income to the minimum monthly maintenance needs allowance, there shall be substituted, for the community spouse resource allowance under subsection (f) (2) of this section, an amount adequate to provide such a minimum monthly maintenance needs allowance" (*id.*).

Here, nothing in the statute prohibits respondent from using the cost of a single premium immediate life annuity as a basis for calculating an increase in the CSRA. As one court recently noted, "[t]he statutory language does not . . . prescribe any particular method" for computing the increased CSRA, thus supporting DOH's "argument that it has broad discretion to select a reasonable methodology for making this determination" (*Matter of Lynch v Commissioner of N.Y. State Dept. of Health*, 18 Misc 3d 1113[A], 2008 NY Slip Op 50015[U], *4 [Sup Ct, Albany County, Jan. 9, 2008]). The *Lynch* court also noted that the Centers for Medicare and Medicaid Services (CMS), the federal agency charged with administering the Medicaid program, advised State Medicaid directors that

> "[s]tates may use **any reasonable method** for determining the amount of resources necessary to generate adequate income, **including adjusting the CSRA to the amount a person would have to invest in a single premium annuity to generate the needed income**, attributing a rate of return based on a presumed available rate of interest, or other methods" (*id.* at *5).

Moreover, as this case demonstrates, the federal issue involved is a pure legal question capable of resolution by this Court, thereby obviating the need for remittal. Thus, in my view, petitioner clearly failed to establish his entitlement to attorney's fees on this record because respondent did not violate federal law (i.e., 42 USC § 1396r-5 [e] [2] [C]).

Chief Judge KAYE and Judges GRAFFEO and READ concur with Judge JONES; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judge SMITH concurs; Judge CIPARICK taking no part.

Order reversed, etc.